UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MUSTAPHAA BURNS,<br><br>                      Plaintiff,<br><br>       v.<br><br>PTL. MARGAUX LOURES *et al.*,<br><br>                   Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br><br>No. 1:24-cv-7690 (KMW-SAK)<br><br>**OPINION** |

**Derek Alan Steenson, Esquire**
100 S. Broad Steet
Ste #812B
Philadelphia, PA 19110

*Counsel for Mustaphaa Burns*

**Katherine Ellen Chrisman, Esquire**
SAUL EWING LLP
650 College Road E.
Ste 4000
Princeton, NJ 08540

**Matthew J. Behr**
MASHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
15000 Midlantic Drive
Ste 200
P.O. Box 5429
Mount Laurel, NJ 08054

**Tracy L. Burnley**
MASHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
15000 Midlantic Drive
Ste 200
P.O. Box 5429
Mount Laurel, NJ 08054

*Counsel for Defendants Ptl. Margaux Loures, Sgt. Andrew Brewer, K-9 Officer Philip Foglia*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

Plaintiff Mustaphaa Burns ("Plaintiff") brings this action against Defendants Ptl. Margaux

Loures, Sgt. Andrew Brewer, and K-9 Officer Philip Foglia (collectively, "Defendants"), alleging that they violated Plaintiff's rights under the Fourth and Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, based on a traffic stop and subsequent arrest.

Presently before the Court is Defendants' motion for summary judgment (ECF No. 32.), Plaintiff's opposition (ECF No. 33.) and Defendants' reply. (ECF No. 36.) The Court has considered the parties' written submissions, finds oral argument unnecessary, and decides the motions on the papers. For the reasons set forth below, Defendants' Motion is GRANTED as to any claim based on the legality of the initial traffic stop and DENIED as to all other claims.

## II.   BACKGROUND

This case arises from a traffic stop and subsequent arrest of Plaintiff on August 14, 2022. (ECF No. 32-2 at ¶ 1;[1] ECF No. 33-1 at ¶ 1.[2]) At the time of the incident, Patrolwoman Margaux Loures ("Ptl. Loures") and Sergeant Andrew Brewer ("Sgt. Brewer") were officers employed by the Westampton Police Department, and K-9 Officer Philip Foglia ("Officer Foglia") was employed by the Lumberton Township Police Department. (ECF No. 32-2 at ¶¶ 3-4.)

Plaintiff exited Route 295 North and pulled into a motel parking lot to enter an address into the GPS on his phone. (ECF No. 32-2 at ¶¶ 6-7; ECF No. 33-1 at ¶¶ 6-7.) While parked in front of the motel, Plaintiff remained inside his vehicle. (ECF No. 32-2 at ¶ 8; ECF No. 33-1 at ¶ 8.) According to the Westhampton Township Police case report, Ptl. Loures observed Plaintiff's vehicle in the motel parking lot, known to Westampton Police as a high drug activity area. (ECF No. 32-2 at ¶¶ 22, 23.) Ptl. Loures also observed the vehicle's tinted windows, including the windshield, which prevented her from seeing inside the vehicle. (*Id.* at ¶ 22.) Plaintiff remained in the parking lot approximately three to five minutes before leaving. (*Id.* at ¶ 24; ECF No. 33-1 at

---

[1] Defs.' Amended Statement of Material Facts ("DSMF") (ECF No. 32-2.)
[2] Pl.'s Responsive Statement of Material Facts ("PRSMF") (ECF No. 33-1.)

¶¶ 24, 32.) Having observed the foregoing, Ptl. Loures initiated a traffic stop of Plaintiff's vehicle based on its tinted windows. (ECF No. 32-2 at ¶ 9; ECF No. 33-1 at ¶ 9.) During his deposition, Plaintiff acknowledged that the window tint on his car was too dark. (ECF No. 32-2 at ¶ 35; ECF No. 33-1 at ¶ 35.)

During the first few minutes of the stop, Ptl. Loures requested Plaintiff's license, registration, and proof of insurance. (ECF No. 32-2 at ¶ 10; ECF No. 33-1 at ¶ 10; ECF No. 33-2 at ¶ 1.[3]) Plaintiff initially provided an expired insurance card. (ECF No. 32-2 at ¶ 25; ECF No. 33-1 at ¶ 25.) According to Ptl. Loures' body camera video, she then spent several minutes entering information into the computer mounted on her patrol car dashboard. (ECF No. 33-2 at ¶¶ 1-5.) According to her narrative report, Ptl. Loures then contacted Central Communications to request an exterior "sniff" of Plaintiff's vehicle and to check Plaintiff for any outstanding warrants. (ECF No. 32-2 at ¶¶ 11, 26.) However, according to Plaintiff, Ptl. Loures' body camera video shows that it was only upon learning Plaintiff had valid insurance, and approximately twenty-two minutes into the traffic stop, Ptl. Loures ran Plaintiff for warrants through Central Communications. (ECF No. 33-1 at ¶ 26; ECF No. 33-2 at ¶ 29.)

Sgt. Brewer arrived approximately ten to eleven minutes into Ptl. Loures body camera video. (ECF No. 33-2 at ¶¶ 8-9.) Ptl. Loures asked Sgt. Brewer how to look up Plaintiff's criminal history and informed him that she contacted Central Communications for a K-9. (*Id.* at ¶¶ 15-16.) A few minutes later, Sgt. Brewer tells Ptl. Loures that he asked Plaintiff if he made any stops, and Plaintiff told Sgt. Brewer that he stopped at the motel to use his GPS on his phone and that he did not get out of his car and no one approached his car. (*Id.* at ¶ 18.) Plaintiff later provided Sgt. Brewer with up-to-date car insurance, which Sgt. Brewer later confirmed to Ptl. Loures was valid.

---

[3] Pl.'s Supplemental Statement of Disputed Material Facts ("PSSDMF") (ECF No. 33-2.)

(*Id.* at ¶¶ 26, 28.) Approximately twenty minutes into Ptl. Loures' body camera video, Sgt. Brewer stated, "he's gonna be any longer we're gonna have to terminate this, can't hold him any longer than we have to you know." (*Id.* at ¶ 27.) Approximately six minutes later, Central Command notified Ptl. Loures that Plaintiff did not have any warrants. (*Id.* at ¶ 32.) Plaintiff contends that the officers unlawfully prolonged the traffic stop while waiting for the arrival of the K-9 unit. (ECF No. 33-9 at pp. 12, 21.[4])

According to Ptl. Loures' Narrative Report, while waiting to hear back from Central Communications regarding potential warrants, K-9 Officer Foglia arrived at the scene. (ECF No. 32-2 at ¶ 27.) Before conducting the K-9 sniff, Officer Foglia questioned Plaintiff about his arrest history and asked for consent to search Plaintiff's vehicle. (ECF No. 33-2 at ¶¶ 33-35.) After Plaintiff refused consent, officers ordered him out of the vehicle and directed him to stand off to the side of the roadway while the K-9 sniff was conducted. (*Id.* at ¶¶ 34-36.) The K-9 gave a positive indication for illegal narcotics. (ECF No. 32-2 at ¶ 28; ECF No. 33-1 at ¶ 28.) According to Defendants, the officers searched Plaintiff's vehicle and recovered a "white/clear crystal like rock substance" suspected to be a controlled dangerous substance (CDS), along with a small scale and a folding knife. (ECF No. 32-2 at ¶¶ 13, 29-30.) During his deposition, Plaintiff admitted that marijuana and a digital scale were present in his vehicle at the time of the stop. (ECF No. 32-2 at ¶ 33; ECF No. 33-1 at ¶ 33.) Plaintiff disputes Defendants' characterization of the evidence recovered during the search. Plaintiff contends that the substance collected from Plaintiff's vehicle was "clearly food crumbs" and not a suspected CDS. (ECF No. 33-2 at ¶¶ 37-41; ECF No. 33-1 at ¶ 29.) Plaintiff points to body camera footage where the officers appeared unsure about the substance they recovered from Plaintiff's vehicle. (ECF No. 33-2 at ¶¶ 38-40.) For example,

---

[4] Pl.'s Brief in Support of Pl.'s Response in Opposition to Defs.' Motion for Summary Judgment (ECF No. 33-9.)

Officer Foglia asks Ptl. Loures about the substance and Ptl. Loures says "you'd know better than me." (*Id.* at ¶ 38.) Ptl. Loures also says "we'll bag it up and we'll see," to which Officer Foglia says, "I wish we had field tests." (*Id.* at ¶ 39.) Sgt. Brewer asks Ptl. Loures what the substance was, to which Ptl. Loures questions if its "crack?" (*Id.* at ¶ 40.) Ptl. Loures showed the crumbs to Plaintiff who thought it could be "glazed icing, like pieces of something, like a donut or something." (*Id.* at ¶ 41.) Laboratory testing later confirmed the substance was not narcotics or CDS. (*Id.* at ¶ 37.) No packaging for crack cocaine or any other CDS were located on Plaintiff's person or in Plaintiff's vehicle. (*Id.* at ¶ 42.)

Officers arrested Plaintiff for possession of cocaine and drug paraphernalia. (ECF No. 32-2 at ¶ 14; ECF No. 33-1 at ¶ 14.) Plaintiff was detained in county jail in pre-trial detention for fifty-five days. (ECF No. 32-2 at ¶ 15; ECF No. 33-1 at ¶ 15.) At the time of Plaintiff's arrest, Ptl. Loures had one year and almost eight months experience as a Westhampton police officer and had attended police academy, but no other training related to the investigation of criminal activity. (ECF No. 33-2 at ¶¶ 11-14.)

Plaintiff alleges he was unlawfully detained following the initial traffic stop, that there was no probable cause for his detention nor probable cause to believe the substance in Plaintiff's car was an illegal substance, that his rights to be free from unlawful detention, unlawful search and seizure of his property, unlawful arrest, malicious prosecution, and the fabrication of evidence to be used against him were violated, and that Defendants violated the Fourth Amendment related to his incarceration in the county jail for fifty-five days and malicious prosecution pursuant to Section 1983. (ECF No. 32-2 at ¶¶ 17-21; ECF No. 33-1 at ¶¶ 17-21.)

Plaintiff commenced this action on July 10, 2024. (ECF No. 1.[5]) Defendants filed their

---

[5] Complaint ("Compl.") (ECF No. 1.)

5

Answer on September 9, 2024. (ECF No. 7.[6]) Defendants filed their first Motion for Summary Judgment on July 14, 2025 (ECF No. 24.), which this Court rejected for failure to cite to the Statement of Undisputed Material Facts. (ECF No. 25.) Defendants subsequently filed a second Motion for Summary Judgment on July 25, 2025 (ECF No. 26.), which this Court again rejected for failure to cite to the Statement of Undisputed Material Facts. (ECF No. 30.) On August 8, 2025, Defendants filed this Motion for Summary Judgment. (ECF No. 32.[7]) Plaintiff opposed this Motion (ECF No. 33.[8]), and Defendants replied. (ECF No. 36.[9])

## III.    STANDARD OF REVIEW

### Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and come

---

[6] Answer to Complaint with Jury Demand and Separate Defenses (ECF No. 7.)
[7] Defs.' Motion for Summary Judgment ("MSJ") (ECF No. 32.)
[8] Pl.'s Opposition to Defs.' Motion for Summary Judgment ("Opp.") (ECF No. 33.)
[9] Defs.' Reply ("Reply") (ECF No. 36.)

6

forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.    DISCUSSION

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, which in pertinent part provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Therefore, to withstand summary judgment, Plaintiff must demonstrate an underlying constitutional violation because 42 U.S.C. § 1983 is not an independent source of substantive rights but rather provides a cause of action for individuals to seek remedy for the deprivation of rights established elsewhere in the Constitution or federal laws. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). In other words, for Plaintiff to succeed on his various claims under § 1983, he "[1] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] [2] that the alleged deprivation was committed by a person acting under color of state law." *Mosca v. Cole*, 217 F. App'x 158, 163 (3d Cir. 2007) (quoting *Mark v.*

7

*Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). "Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Willson v. Yerke*, 604 Fed. App'x 149, 150 n.4 (3d Cir. 2015) (quoting *West v. Atkins*, 487 U.S. 42, 49, 50 (1988)).

Here, it is undisputed that Defendants were acting under the color of state law during the traffic stop, K-9 sniff, search of Plaintiff's vehicle, and Plaintiff's arrest. Therefore, the Court will focus its analysis on Plaintiff's claims that Defendants violated his constitutional rights by virtue of the traffic stop and arrest. The Court addresses each alleged constitutional violation independently for purposes of summary judgment.

### 1. Fourth Amendment Claims

#### a. Legality of the Initial Traffic Stop

A traffic stop constitutes a seizure under the Fourth Amendment, thus requiring that it be "reasonable under the circumstances." *United States v. Ross*, 151 F.4th 487, 494 (3d Cir. 2025) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). "A traffic stop is reasonable at its inception when an officer has reasonable suspicion to believe that the motorist committed a traffic violation." *Id.* (citing *United States v. Delfin-Colina*, 464 F.3d 392, 396-97 (3d Cir. 2006)).

Here, Plaintiff concedes that Ptl. Loures lawfully pulled him over for the traffic infraction of having tinted windows. (ECF No. 33-9 at p. 8.) The Court agrees and finds the initial traffic stop of Plaintiff's vehicle to be lawful. Accordingly, Defendants are entitled to summary judgment on any claim premised on the illegality of the initial traffic stop.

That said, Terry principles remain relevant insofar as they inform whether officers had independent reasonable suspicion to extend the stop beyond its traffic related mission. *See Ross*, 151 F.4th at 494 ("[A] lawful traffic stop that was justified at the outset only by a traffic violation

8

transforms into an unconstitutional seizure 'if it is prolonged beyond the time reasonably required to complete' that dual mission.") (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)) (internal citations omitted). Accordingly, while the legality of the initial stop is not in dispute and is resolved in Defendants' favor, the Court considers the parties' arguments regarding reasonable suspicion in connection with whether the stop was unlawfully prolonged, as addressed below.

### b. Whether the Traffic Stop Was Unlawfully Prolonged

Although the initial stop was lawful, Plaintiff argues that Ptl. Loures did not possess "reasonable and articulable suspicion to conduct a Terry stop on suspicion of narcotics activity." (ECF No. 33-9 at p. 8.) A seizure that is justified at its inception may nonetheless violate the Fourth Amendment if it is prolonged beyond the time required to complete the mission of the stop. *See Ross*, 151 F.4th at 494 (quoting *Rodriguez*, 575 U.S. at 350-51). "[O]n mission tasks include 'ordinary inquiries incident to [the traffic] stop,' such as 'checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 495 (quoting *Rodriguez*, 575 U.S. at 355). Other tasks which are "done out of an interest to protect officers[,]" are also considered on mission. *Id.* (quoting *United States v. Clark*, 902 F.3d 404, 410 (3d Cir. 2018)). However, "'measure[s] aimed at detect[ing] evidence of ordinary criminal wrongdoing' including a dog sniff," fall outside of the scope, and "officers must have developed 'reasonable suspicion' of criminal activity independent of the traffic violation itself." *Id.* (quoting *Rodriguez*, 575 U.S. at 355-56; *United States v. Green*, 897 F.3d 173, 179 (3d Cir. 2018)).

Defendants argue that given their training and experience they had reasonable suspicion to extend the traffic stop in order to have a K-9 perform an exterior narcotics sniff of the vehicle because Plaintiff initially provided expired proof of insurance, and Plaintiff was parked in a high

drug traffic area with out of state license plates and illegally tinted windows. (ECF No. 32-1 at pp. 11-12.[10]) Defendants also argue that the time it took to have the K-9 arrive for the sniff was no issue. (ECF No. 36 at p. 7.)

Plaintiff asserts no reasonable suspicion existed, noting that Ptl. Loures "had no such particularized training, experience, or expertise" to apply to the situation, that "it is simply not suspicious for a person to be driving a car registered in Pennsylvania on a road in Burlington County, New Jersey," and that while Plaintiff stopped in "a high drug area," Ptl. Loures did not observe anyone exit Plaintiff's car, or anyone approach Plaintiff's car in the short time it was parked in the motel parking lot. (ECF No. 33-9 at pp. 10-11.) Plaintiff also argues that the traffic stop was unlawfully extended by waiting over approximately twenty-two minutes into the stop to check Plaintiff for warrants, which was after Plaintiff produced valid insurance and after Sgt. Brewer had expressed concern over the length of the traffic stop while waiting for K-9 Officer Foglia to arrive. (*Id.* at pp. 11-12.) Officer Foglia then did not begin the exterior sniff of Plaintiff's car until approximately twenty-eight minutes into the traffic stop. (*Id.* at pp. 12-13.)

It is in the province of the jury to conclude whether the officers prolonged the stop beyond the time necessary to complete their mission in order to facilitate a K-9 sniff, and whether Defendants had independent reasonable suspicion outside of the initial traffic stop. Consequently, Defendants' motion for summary judgment is denied on these grounds.

### c. K-9 Sniff, Vehicle Search, and Evidence Recovered

Plaintiff does not contest that his rights were violated because an exterior sniff occurred. Instead, Plaintiff contends that he was unlawfully detained prior to the K-9 sniff, and as a result, the K-9 sniff and subsequent search of Plaintiff's vehicle were the product of an unlawfully

---

[10] Defs.' Brief in Support of Defs.' Motion for Summary Judgment (ECF No. 32-1.)

prolonged stop. (ECF No. 33-9 at p. 13.) As discussed above, since there is still a question as to whether the traffic stop was unlawfully prolonged, the Court declines to grant summary judgment on the claims related to the K-9 sniff, vehicle search, and evidence recovered.

### d. False Arrest and False Imprisonment

Plaintiff seeks to raise false arrest and false imprisonment claims against the Defendants pursuant to 42 U.S.C. § 1983. False arrest and imprisonment claims are two sides of the same coin and have the same essential elements: that the plaintiff was arrested and placed into custody while the arresting officers lacked probable cause to believe he had committed a crime. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995); *see also Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268-69 (3d Cir. 2000). The parties do not contest that an arrest was made, thus the Court turns its analysis to the element of probable cause. Probable cause exists when, at the time a suspect is arrested, there are "facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information [ ] sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). To determine if probable cause existed, the Court is to review the facts available to the officers at the moment of arrest based on the perception of an objectively reasonable police officer, incorporating the totality of the circumstances of the events leading up to arrest. *Lucia v. Carroll*, No. 12-3787, 2014 WL 1767527 at *3 (D.N.J. May 2, 2014) (quoting *Beck*, 379 U.S. at 96); *Gould v. O'Neal*, No. 17-100, 2022 WL 354663 at *6 (D.N.J. Feb. 7, 2022). The role of the Court is to review the record to ensure that the proper procedure for determining probable cause was followed and if not, whether probable cause existed despite the failure to follow proper procedure. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469-70 (3d Cir. 2016). Usually, the question of probable cause in relation to a § 1983 claim is one

for the jury, "[h]owever, a district court may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *Lucia*, 2014 WL 1767527 at *3 (quoting *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 789 (3d Cir. 2000)). "The probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright*, 409 F.3d at 603. The core objective of the Court is to evaluate the reasonableness of belief in the existence of probable cause. *Lucas v. Galloway Twp. Police Dep't*, No. 5-3346, 2007 WL 1797659 at *5 (D.N.J. Jun. 20, 2007).

Defendants argue that probable cause existed to arrest Plaintiff based on the K-9 alert, and resultant recovery of what officers believed to be CDS along with drug paraphernalia. (ECF No. 32-1 at p. 13-14.) Plaintiff counters that "[a]ny observations made by Ptl. Loures during the K-9 exterior sniff and resulting search of Plaintiff's car are... fruit of the poisonous tree." (ECF No. 33-9 at p. 13.) Moreover, Plaintiff argues that even if they were not fruit of the poisonous tree "they were still food crumbs" and there were "[c]redibility conflicts and genuine issues of the material facts regarding what a reasonable officer would think" the crumbs recovered were. (*Id.* at pp. 13-14.)

The existence of probable cause in this case is intertwined with the legality of the preceding exterior sniff and search. If a jury were to conclude the traffic stop was unlawfully prolonged, then the canine sniff, and evidence obtained as a result, could be deemed as fruit of the poisonous tree. *See United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006). In that event, the K-9 alert, substance, and drug paraphernalia may not support probable cause for Plaintiff's arrest. Even assuming this evidence is considered, a jury could conclude that the officers lacked a reasonable

12

basis to believe that the substance removed from Plaintiff's vehicle constituted CDS at the time of arrest. The alleged uncertainty reflected in the body camera video, combined with the later negative laboratory results, creates a question as to whether the officer's belief was objectively reasonable.

Accordingly, the Court concludes that it is for a jury to decide whether probable cause existed to arrest Plaintiff. Therefore, Defendants' motion for summary judgment as to Plaintiff's false arrest and false imprisonment claims are denied.

### 2. Malicious Prosecution

To state a Fourth Amendment claim for malicious prosecution, a plaintiff must plead the following elements:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014) (quoting *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)). The Court will address each element in turn.

The first element for a malicious prosecution claim focuses on whether a defendant initiated a criminal proceeding. As the parties agree that Plaintiff was arrested and charged with possession of cocaine and drug paraphernalia, the first element of the malicious prosecution claim is satisfied. (ECF No. 32-2 at ¶ 14; ECF No. 33-1 at ¶ 14.)

Next, because "a plaintiff need only show that his prosecution ended without a conviction," *Thompson v. Clark*, 596 U.S. 36, 49 (2022), and in this case Plaintiff was released from custody after fifty-five days without a conviction, the second element is satisfied. (ECF No. 32-2 at ¶ 15; ECF No. 33-1 at ¶ 15.)

Third, because the Court has already determined that probable cause is a question for the jury, this element cannot be decided on summary judgment.

The fourth element, requiring Plaintiff to demonstrate that Defendants acted maliciously or for a purpose other than bringing the plaintiff to justice, is likewise satisfied. Essentially, because the issue of probable cause remains a question for the jury, and because malice to support the initiation of a criminal proceeding can likewise be inferred, the granting of summary judgment on this element would be improvident. (*See, Geissler v. City of Atl. City*, 198 F.Supp.3d 389, 399 (D.N.J. 2016) (quoting LoBiondo v. Schwartz, 199 N.J. 62 (N.J. 2009).

Fifth, because the Plaintiff must demonstrate that he suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding, and here, the parties agree that Plaintiff was detained for fifty-five days following his arrest, the fifth element is satisfied. (ECF No. 32-2 at ¶ 15; ECF No. 33-1 at ¶ 15.)

Simply stated, because there is question as to whether Defendants initiated criminal proceedings without probable cause or acted with malice, Defendants' motion for summary judgment is denied on these grounds.

### 3. Fabrication of Evidence[11]

"When falsified evidence is used as a basis to initiate the prosecution of a defendant, or is used to convict him, the defendant has been injured regardless of whether the totality of the evidence, excluding the fabricated evidence, would have given the state actor a probable cause defense in a malicious prosecution action that a defendant later brought against him." *Halsey*, 750 F.3d at 289. "A plaintiff must demonstrate a 'meaningful connection' between the injury and the

---

[11] Plaintiff contends, and it appears that Defendants do not challenge Plaintiff's fabrication of evidence claim in their brief in support of their motion for summary judgment. (ECF No. 33-9 at pp. 21-22.) However, in their reply, Defendants' challenge Plaintiff's fabrication of evidence claims. (ECF No. 36 at p. 8.) Although the Court notes it may refuse to consider arguments first raised in a reply memorandum, *Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (internal citations omitted), to fully resolve Defendants' motion, the Court will consider Defendants' argument raised in their reply.

14

use of fabricated evidence." *Johnson v. New Jersey*, No. 18-11299, 2024 WL 4906034, at *13 (D.N.J. Nov. 27, 2024), reconsideration denied, No. 18-11299, 2025 WL 1743626 (D.N.J. June 24, 2025) (quoting *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69 (3d Cir. 2017) (internal citations omitted)). "[A] 'fabrication-of-evidence claim requires persuasive evidence [the defendant] formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth.'" *Id.* at *14 (quoting *Mervilus v. Union Cnty.*, 73 F.4th 185, 194–95 (3d Cir. 2023)). To survive a motion for summary judgment, Plaintiff must bring "persuasive evidence supporting a conclusion" that Defendants were "aware that evidence was incorrect or that it was offered in bad faith." *Id.* (internal citations and quotations omitted).

Here, Defendants argue "there is no evidence to support any claim that any evidence was 'made-up.'" (ECF No. 36 at p. 8.) However, Plaintiff points to the mischaracterized substance and misrepresentations made in Ptl. Loures Narrative Report. (ECF No. 33-9 at pp. 21-22.) Thus, Plaintiff's claim rests not only on the fact the substance later tested negative, but on the contention that the officers should have been aware that the substance was not CDS at the time of arrest but characterized it as such.

A jury could conclude Defendants mischaracterized evidence in a manner that contributed to the initiation of charges against Plaintiff. Accordingly, Defendants' motion for summary judgment is denied to the extent it addresses Plaintiff's fabrication of evidence claims.

## V.    CONCLUSION

For all of the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 32) is GRANTED as to any claim based on the legality of the initial traffic stop and DENIED as to all other claims.

Dated:    March 30, 2026

KAREN M. WILLIAMS
United States District Judge

16